Dear Mr. Roedel:
You have requested an opinion of the Attorney General regarding the disposition of $32,500.62, representing surplus funds of the Louisiana Residual Malpractice Authority ("Authority"). The funds in question were deposited on August 27, 1990, and invested in a certificate of deposit in the name of the Authority in a New Orleans bank. You ask whether the funds are subject to the control and disposition of the Patient's Compensation Fund Oversight Board ("Board").
The laws comprising the Medical Malpractice Act are found at LSA-R.S. 40:1299.41 through 40:1299.48. Enacted by Act No. 817 of the 1975 Regular Session of the Louisiana Legislature, it revamped the procedures to be followed for the assertion of monetary damages allegedly resulting from medical malpractice. The Authority was established pursuant to LSA-R.S. 40:1299.46. Prior to its amendment in 1990, Section 1299.46 designated the Department of Insurance as the Authority. However, Act 967 of 1990 amended said section and designated the Board to govern and administer the Authority, effective October 1, 1990.
The Authority was empowered to issue policies of primary malpractice liability insurance to health care providers who could not procure said insurance in the private sector, but who were determined to be reasonable risks. The Authority wrote the insurance and collected the premiums, out of which were paid claims and expenses. The Authority has, for all practical purposes, not been operational since the late 1970's. The funds at issue apparently represent a surplus of premiums over losses and expenses realized by the Authority during its operations.
LSA-R.S. 40:1299.46(H) provides, with respect to these funds, the following:
 "H. The surplus of premiums over losses and expenses received by the authority shall be placed in a segregated fund and shall be invested and reinvested by the risk manager with the concurrence of the board in accordance with the insurance code of the state of Louisiana and investment income generated shall remain in the fund. These funds shall not be considered public or state funds." (Emphasis added.)
As can be seen from the above, the fund must be placed and remain in a segregated fund and invested by the risk manager with the concurrence of the Board.
The Board was established by LSA-R.S. 40:1299.44(D). It provides:
 "D. (1)(a) The Patient's Compensation Fund Oversight Board is hereby created and established in the office of the governor. The board shall be comprised of nine members, appointed by the governor subject to Senate confirmation."
One of the functions of the Board is to collect, administer, and protect the Patient's Compensation Fund, ("PCF"), a special fund in the State Treasury, comprised of voluntary collections from private health care providers electing to participate in the PCF. The Board's oversight of the fund extends to establishing reserves and evaluating and settling claims. LSA-R.S. 40:1299.44(A)(1) provides, in pertinent part:
 "The state recognizes and acknowledges that the fund and any income from it are not public monies, but rather are private monies which shall be held in trust as a custodial fund by the state for the use, benefit, and protection of medical malpractice claimants and the fund's private health care provider members, and all of such funds and income earned from investing the private monies comprising the corpus of this fund shall be subject to use and disposition only as provided by this Section."
As can be seen from the above, the law has established two separate and distinct trust funds — the PCF administered by the Board and the segregated fund containing the money at issue administered by the risk manager with Board concurrence.
As stated previously, the Authority discontinued writing primary policies in the late 1970's. While no policies have been written, the laws establishing the Authority, its powers and duties, and the segregated fund have never been repealed, despite their recent amendment in 1990. Thus, the funds in question are available to pay malpractice claims against qualified risks who were issued a policy by the Authority.
In conclusion, while the Board may govern and administer the Authority, it does not have the legal discretion to dispose of funds belonging to the Authority represented by the certificate of deposit. Any disposition of these funds must be accomplished legislatively.
Trusting this information adequately addresses your question, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI:REH, III/clm 0056R